UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 1, 2018

LETTER TO COUNSEL

      RE:    *Lonnie Applefeld v. Commissioner, Social Security Administration*;
             Civil No. SAG-17-517

Dear Counsel:

On February 21, 2017, Plaintiff Lonnie Applefeld petitioned this Court to review the Social Security Administration's final decision to deny his claims for benefits. [ECF No. 1]. I have considered the parties' cross-motions for summary judgment. [ECF Nos. 15, 18]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Mr. Applefeld's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Mr. Applefeld filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 9, 2010, alleging a disability onset date of August 1, 2008. (Tr. 275-78, 279-87). His claims were denied initially and on reconsideration. (Tr. 68-95, 96-125). A hearing was held on May 16, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 218, 220). Following that hearing, on July 26, 2013, the ALJ determined that Mr. Applefeld was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 126-45). The Appeals Council ("AC") granted Mr. Applefeld's request for review and remanded his claims for further proceedings. (Tr. 146-47). Another hearing was held on April 21, 2015. (Tr. 26-67). The ALJ subsequently issued a new decision, again finding that Mr. Applefeld was not disabled. (Tr. 9-25). This time, the AC denied Mr. Applefeld's request for review, (Tr. 1-5), so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Applefeld suffered from the severe impairments of "obesity; degenerative disc disease; left knee degenerative joint disease and meniscus tear status post arthroscopy; umbilical hernia status post repair; gout; bilateral carpal tunnel syndrome status post repair; bipolar disorder; depression; anxiety; and alcohol abuse." (Tr. 15). Despite these impairments, the ALJ determined that Mr. Applefeld retained the residual functional capacity ("RFC") to:

>perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he needs the option to change positions from sitting to standing approximately every 30 minutes, can frequently crouch, kneel, crawl, and climb stairs, but only occasionally stoop, and must never climb ladders/ropes/scaffolds. He can understand, remember, and carry out only simple instructions, and can perform simple, routine, and repetitive tasks with occasional changes in the work setting and occasional required interaction with the public, supervisors, and coworkers.

(Tr. 17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Applefeld could perform several jobs existing in significant numbers in the national economy. (Tr. 24). Accordingly, the ALJ determined that Mr. Applefeld was not disabled. (Tr. 25).

Mr. Applefeld raises several issues on appeal, including that the ALJ: (1) erroneously performed the Listing analysis; (2) improperly concluded that his diagnoses of hyperlipidemia and hypothyroidism were non-severe; (3) failed to properly evaluate his credibility in accordance with *Lewis v. Berryhill,* 858 F.3d 858 (4th Cir. 2017); (4) failed to perform a function-by-function analysis with respect to his neuromuscular and mental health symptoms; (5) failed to properly assess the opinions of treating physician, Dr. Lelin Chao, and his friend, Cheryl Fellows; and (6) erred in her evaluation of the VE's testimony. Pl. Mot. 7-26. Each argument lacks merit and is addressed below.

First, Mr. Applefeld argues that the ALJ failed to adequately assess whether his impairments met or equaled the criteria set forth in Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). Step three of the sequential evaluation requires the ALJ to determine whether a claimant's impairments meet or medically equal the criteria of any listings set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1. To meet a medical listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000). The ALJ "should include a discussion of which evidence [she] found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)). Importantly, it is not my role to "engage[] in an analysis that the ALJ should have done in the first instance." *Id.* Rather, the ALJ must provide sufficient reasoning to "reveal *why* [she] was making [her] decision." *Id.* Contrary to Mr. Applefeld's argument, the ALJ properly assessed Mr. Applefeld's impairments with respect to Listings 1.02 and 1.04. In her Listing 1.04 analysis, the ALJ found that "the objective evidence simply fails to indicate that [Mr. Applefeld] has the requisite findings or level of functional loss based on a musculoskeletal impairment required by the Listings, *including the inability to ambulate effectively*, as defined in 1.00B2b." (Tr. 15) (emphasis added). Moreover, in her Listing 1.02 analysis, the ALJ also found that "the evidence does not demonstrate that [Mr. Applefeld] has the degree of difficulty in performing fine and gross movements . . . ." *Id.* The ALJ, therefore, expressly considered the criteria in both Listings 1.02 and 1.04, applied these requirements to the record evidence, and concluded that Mr. Applefeld had not demonstrated that his impairments met or equaled the criteria of either listing. *See Scott*, 2016 WL 6585575, at *2.

Mr. Applefeld also argues that the ALJ erred in her assessment of Listings 12.04 and 12.06. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00-12.15 (2015). The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id*. § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id*. Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 12.00(C). The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id*. § 404.1520a(c)(4). To satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06. The ALJ must document the application of the technique in the hearing decision, incorporating pertinent findings and conclusions, and documenting the significant history and functional limitations that were considered. *Id.* § 404.1520(e)(4). Here, the ALJ addressed each of the relevant functional areas, assigned an appropriate level of restriction for each area, and provided supporting analysis while citing to the evidence of record. (Tr. 16-17). Specifically, the ALJ concluded that Mr. Applefeld suffered "moderate" restriction in daily living activities, social functioning, and concentration, persistence, or pace, and has experienced no episodes of decompensation. *Id.* In reaching her conclusion, the ALJ thoroughly discussed and cited to Mr. Applefeld's hearing testimony and admissions in his function reports, as well as the third-party function report provided by his friend, Ms. Fellows. (Tr. 16-17). Even if there is other evidence that may support Mr. Applefeld's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in light of the evidence cited by the ALJ in her listing analysis, there is no basis for remand.

Second, Mr. Applefeld argues that the ALJ erroneously concluded that his hypothyroidism and hyperlipidemia were non-severe. An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that his impairment is severe. *See Johnson v. Astrue*, Civil Action No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Here, the ALJ adequately considered Mr. Applefeld's hypothyroidism and hyperlipidemia at step two. (Tr. 15). In her step two analysis, the ALJ cited to treatment records and concluded that "the medical evidence of record does not indicate that these impairments impose more than a slight limitation on [Mr. Applefeld's] ability to perform basic work-related activities." *Id.*; *see* (Tr. 813-814) (Exhibit 25F, in which the treating physician noted "thyroid normal size/shape," "regular [heart] rate and rhythm . . . , no murmur, rub, or gallop," and "no chest or abd pain"). Accordingly, the ALJ fairly concluded that hypothyroidism and hyperlipidemia were non-severe. Moreover, even if the ALJ erred in her

evaluation of these impairments at step two, such error would be harmless. Because Mr. Applefeld made the threshold showing that his other impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments, both severe and non-severe, that significantly impacted Mr. Applefeld's ability to work. *See* 20 C.F.R. §§ 404.1523, 416.923. Any step two error, therefore, does not necessitate remand.

Third, Mr. Applefeld contends that the ALJ failed to properly evaluate his credibility in accordance with the Fourth Circuit's holding in *Lewis*. Pl. Mot. 14-19. Specifically, Mr. Applefeld asserts that the ALJ "fail[ed] to properly consider all relevant positive findings in the . . . evidence in the record and instead 'play[ed] doctor' and 'cherry pick[ed]' irrelevant findings . . . ." Pl. Mot. 16. In assessing the credibility of a claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record." SSR 96-7P, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). An ALJ, however, cannot rely exclusively on objective evidence to undermine a claimant's subjective assertions of disabling pain. *See Lewis*, 858 F.3d at 866 (holding that the ALJ improperly discounted the claimant's subjective complaints "based solely on the lack of objective evidence" supporting the claimant's assertions).

Contrary to Mr. Applefeld's argument, the ALJ properly evaluated his credibility after evaluating medical and non-medical evidence on the record. First, the ALJ found that, despite his complaints of disabling functional limitations, Mr. Applefeld "has engaged in a somewhat normal level of daily activity and interaction." (Tr. 21). For example, the ALJ noted that, based on his own testimony and statements, Mr. Applefeld's daily living activities included "driving, light household chores, preparing simple meals, and performing skilled work on a part-time basis" during tax season. *Id.*; *see, e.g.*, (Tr. 42) (Mr. Applefeld's hearing testimony, in which he stated that he drove "45 minutes" to the hearing, and that he was "okay for about that time"); (Tr. 58) (Mr. Applefeld's hearing testimony, in which he stated that he was able to do "simple household chores" and "simple cooking"); (Tr. 52-53) (Mr. Applefeld's hearing testimony, in which he stated that he worked as a tax preparer for three eight-hour days per week during tax season). Moreover, the ALJ discussed and cited to the medical evidence, observing that Mr. Applefeld "demonstrated mostly normal clinical findings at appointments" and that treatment notes "include no indication of severe symptoms that would preclude work within the [RFC]." (Tr. 21). Importantly, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Again, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays*, 907 F.2d at 1456. Ultimately, the ALJ's evaluation of the record evidence amply supports the ALJ's conclusion that Mr. Applefeld's alleged limitations were not entirely credible. Thus, the ALJ properly evaluated Mr. Applefeld's credibility, and supported her findings with substantial evidence.

Fourth, Mr. Applefeld argues that the ALJ failed to perform a function-by-function analysis related to his neuromuscular and mental health symptoms, in accordance with *Mascio v.*

*Colvin*, 780 F.3d 632 (4th Cir. 2015). Pl. Mot. 19. Specifically, Mr. Applefeld contends that the ALJ failed to consider "how often he would be off task from completing a given job and/or being punctual to or absent from a job on a regular or unpredictable basis." *Id.* In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace, at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

Here, at step three, the ALJ found that Mr. Applefeld suffered from "moderate difficulties" in the area of concentration, persistence, or pace. (Tr. 17). In the RFC assessment, the ALJ provided that Mr. Applefeld "can understand, remember, and carry out only simple instructions, and can perform simple, routine, and repetitive tasks with occasional changes in the work setting and occasional required interaction with the public, supervisors, and coworkers." *Id.* Although a limitation to simple, routine, and repetitive tasks alone is insufficient under *Mascio*, the ALJ in the instant case explained that the "evidence supports a conclusion that [Mr. Applefeld] would be able to work at a regular pace and maintain focus during the workday for such tasks. . . . [and] [t]here is thus no support for additional limitations in persistence or pace." (Tr. 22). The ALJ, for example, observed that Mr. Applefeld completed a computer course from February 2011 until June 2011, "which provided structure and focus as well as increasing interactions with others." *Id.* Moreover, the ALJ noted that Mr. Applefeld "worked as a tax preparer for several months in 2012, 2013, and 2014." *Id.* Accordingly, because the ALJ explained why Mr. Applefeld's moderate limitation in concentration, persistence, or pace did not translate into a RFC limitation, I find no error warranting remand under *Mascio*.

Fifth, Mr. Applefeld contends that the ALJ erred in her assignments of weight to various medical and non-medical sources. Pl. Mot. 19-21. Specifically, Mr. Applefeld argues that the ALJ erroneously accorded "little" weight to the opinion of treating physician, Dr. Chao, and "significant" weight to the opinions of the State agency mental and physical evaluations. *Id.* A treating physician's opinion is given controlling weight, unless it is not supported by the clinical evidence or is inconsistent with other substantial evidence. *See Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, including the length and nature of the treating relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6). The Commissioner must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and

psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Here, the ALJ properly supported her assignments of weight with substantial evidence. Turning first to Dr. Chao's medical opinion, Dr. Chao stated that Mr. Applefeld "had no restriction with sitting and that he could stand and walk for one hour each, which is consistent with sedentary work." (Tr. 22); *see* (Tr. 689-90). Dr. Chao also opined that Mr. Applefeld can never climb, bend, squat, or crawl, and can only lift or carry less than ten pounds. (Tr. 689). As an initial matter, Dr. Chao's Medical Report Form 500 consists of brief "checkbox form opinion[s]" that provide limited opportunity for narrative assessment or citation to the medical record. (Tr. 689-90); *see Brown ex rel. A.W. v. Comm'r of Soc. Sec.*, No. CIV. SAG-12-52, 2013 WL 823371, at *2 (D. Md. Mar. 5, 2013) ("[I]t would be difficult for an ALJ to assign any meaningful weight to opinions devoid of evidentiary support."); *see also Beitzell v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-12-2669, 2013 WL 3155443, at *3 (D. Md. June 18, 2013) (upholding the ALJ's assignment of weight and noting that the treating physician's assessment "provided no narrative explanation for the limitations proposed in the form"). Indeed, in response to where Dr. Chao "checked a box indicating that [Mr. Applefeld]'s ability to work through 2014 was limited," the ALJ noted that "there is no indication of *how* [Mr. Applefeld] is limited in this regard . . . ." (Tr. 22) (emphasis added). Moreover, the ALJ found that Dr. Chao's opinions were not supported by the clinical evidence. *Id.* The ALJ, for example, observed that "[t]here is no support in the record for the finding that [Mr. Applefeld] can 'never' perform postural activities." *Id.* In her RFC assessment, the ALJ also cited Dr. Chao's treatment notes, which revealed that Mr. Applefeld had "normal gait and station and 5/5 strength in the upper and lower extremities." (Tr. 19); *see* (Tr. 734). Similarly, the ALJ thoroughly discussed and cited to evidence to support her assignment of "significant" weight to the State agency mental and physical evaluations. (Tr. 21). In particular, the ALJ referenced Mr. Applefeld's treatment notes, which revealed mild symptoms, and Mr. Applefeld's daily living activities, which included "clean[ing] a chimney in December 2010 . . . [,] helping with housework, mowing the lawn and other activities." (Tr. 21-22). In light of the evidence on the record, the ALJ properly supported her assignments of weight to the opinions of Dr. Chao and the State agency mental and physical evaluations with substantial evidence.

Mr. Applefeld further contends that the ALJ "committed reversible error by [her] failure to afford any kind of significant weight to the third party function report of [his] friend, Cheryl Fellows . . . ." Pl. Mot. 21. In addition to evidence from medical sources, the ALJ may consider evidence from "other sources," including friends, as a source of "insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). In evaluating evidence from other sources, the ALJ may consider various factors, including "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.* at *6. Here, the ALJ explicitly considered and evaluated Ms. Fellows's third party function report at steps three and four of the sequential evaluation. *See* (Tr. 16-22). First, the ALJ considered Ms. Fellows's function report in her application of the "special technique," noting that Ms. Fellows had described Mr. Applefeld's difficulties and limitations in the

functional areas. (Tr. 16-17). Additionally, the ALJ found that Mr. Applefeld's "testimony and function reports *as well as that of Ms. Fellows* described more severe impairments . . . [but that] [t]hese statements are not credible in view of the evidence in this case." (Tr. 22) (emphasis added). In assessing the credibility of Ms. Fellows's statements, the ALJ evaluated and cited to both the medical evidence, including findings of "euthymic [mood] with broad affect," and Mr. Applefeld's activities, including exercise and participation in computer courses. *Id.*; *see* (Tr. 481). Accordingly, I find no error in the ALJ's evaluation of Ms. Fellows's third party function report. Remand is therefore not warranted on this basis.

Finally, Mr. Applefeld argues that the ALJ improperly posed hypothetical questions with limitations that were not supported by substantial evidence. Pl. Mot. 21-24. An ALJ is afforded "great latitude in posing hypothetical questions, and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)); *see also Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988) ("[E]xclusion of some of a claimant's subjective complaints in questions to a [VE] is not improper if the Secretary makes specific findings justifying his decision not to believe the claimant's testimony about claimed impairments such as pain.") (citation omitted). Moreover, a hypothetical question is unimpeachable as long as it "adequately reflects the RFC for which the ALJ had sufficient evidence." *Petry v. Comm'r, Soc. Sec. Admin.*, SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017 (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)). In the instant case, the ALJ first asked the VE:

> Let's assume an individual of the same, education, and work experience of [Mr. Applefeld] with the following functional limitations: This individual is limited to light work, he needs an option to change positions from sitting to standing at the work station every 30 minutes, can occasionally stoop and frequently crouch, kneel, crawl and climb stairs and ramps. He cannot climb ladders, ropes or scaffolds. He can understand, remember, carryout simple instructions and perform simple routine tasks with occasional changes in work settings and occasional required interaction with the public, supervisors and coworkers. . . . Assuming these limitations, are there other jobs a person could perform?

(Tr. 63). In response, the VE confirmed that, based on the ALJ's hypothetical, the individual could perform several jobs existing in the national economy.[1] *Id.* The ALJ subsequently posed

---

[1] While not a basis for remand, I note that two of the hypothetical jobs identified by the VE—namely, "photocopy operator" and "retail price marker"—are obsolete. *See* (Tr. 63). The VE relied on the Dictionary of Occupation Titles ("DOT"), a document published by the United States Department of Labor and last updated in 1991. *See* United States Department of Labor, Dictionary of Occupational Titles (4th Ed., Rev. 1991), available at http://www.oalj.dol.gov. According to the DOT, the job of "photocopy operator" consists of a person who "[t]ends duplicating machine to reproduce handwritten or typewritten matter: [p]laces original copy on glass plate in machine[,] [p]laces blank paper on loading tray[,] [s]ets control switch for number of copies[,] [and] [p]resses button to start machine . . . ." *Id.* at 207.685-014. Additionally, the job of "retail price marker" consists of a person who "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information . . . ." *Id.* at 209.587-034. As decided by the Sixth Circuit in *Cunningham v. Astrue,* 360 F. App'x 606, 615 (6th Cir. 2010), and

hypotheticals that included limitations to sedentary work, being "off task for 20% of the day," and being "absent from work three days a month." (Tr. 64). As previously noted, however, the ALJ properly found that Mr. Applefeld failed to demonstrate any need for "additional limitations in persistence or pace." (Tr. 22). Moreover, the ALJ properly assigned significant weight to the State agency mental and physical evaluations, and further "reduced [Mr. Applefeld's] exertional limitation from medium to light in view of his complaints of pain and his obesity." (Tr. 21). Accordingly, the ALJ adequately supported her RFC assessment with substantial evidence after reviewing the evidence of record, and, therefore, properly relied on the VE's testimony in response to a hypothetical that matched the ALJ's RFC finding. *See Koonce*, 1999 WL 7864, at *5.

Mr. Applefeld also argues that the ALJ erroneously accepted the VE's testimony related to restrictions not addressed by the Dictionary of Occupational Titles ("DOT"), because the VE "failed to properly describe her 'experience' that she relied upon to provide the representative job titles/numbers . . . ." Pl. Mot. 25. Specifically, Mr. Applefeld asserts that, to support her testimony, the VE "just stat[ed] a very brief explanation of 'job analysis' over thirty-six (36) years as opposed to testimony regarding actual job placement experience and speaking directly with employers, particularly in the line of work for the job titles cited to by the VE and relied upon by the ALJ in her decision." *Id.* This argument has no merit. In resolving an apparent conflict between the VE's testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000); *see also Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628-29 (9th Cir. 2011). Importantly, "[e]vidence from VEs . . . can include information not listed in the DOT . . . [,] [but] available in other reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling." SSR 00-4P, 2000 WL 1898704, at *2. During the hearing, the ALJ asked the VE for the basis of her testimony, after noting that the sit/stand option is not included in the DOT. (Tr. 63-64). The VE responded that her testimony was "based on the job analysis that [she has] done over the past 36 years in order to look at job accommodations for individuals that have certain limitations[,] . . . [and] whether the task can be done both sitting and standing." (Tr. 64). In her decision, the ALJ noted that, in response to the apparent conflict relating to the sit/stand option, the VE "testified that her conclusion . . . [was] based on her experience in vocational rehabilitation and job placement," and further concluded that she "accepted this as a reasonable explanation for the discrepancy." (Tr. 24). Thus, the ALJ explicitly addressed and elicited an explanation for the apparent conflict between the DOT and the VE's testimony, and subsequently explained how the conflict was resolved in her decision. Accordingly, I do not find legal error with the ALJ's reliance on the VE's testimony.

---

by this Court in *Czosnowski v. Comm'r, Soc. Sec.*, Civil No. RDB-13-1467, 2014 WL 1660083, at *4 (D. Md. Apr. 23, 2014), when the descriptions of positions in the DOT appear obsolete, the VE should consult more recent sources of information to establish substantial evidence of the continued existence of the position. In this case, however, the VE testified to the availability of a third position, which does not appear outdated. *Id.* at 222.687-014 ("Garment Sorter"). Therefore, I find that the ALJ's decision that Mr. Applefeld can perform jobs that exist in significant numbers in the national economy remains supported by substantial evidence. *See Lawler v. Astrue*, No. 09-1613, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011).

For the reasons set forth herein, Mr. Applefeld's Motion for Summary Judgment [ECF No. 15] is DENIED, and Defendant's Motion for Summary Judgment [ECF No. 18] is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge